UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG FARLEY,<br><br>        Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Secretary of the California Department of Corrections and Rehabilitation,<br><br>        Respondent. | Case No.: 16cv188-LAB (BGS)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Craig Farley, a prisoner in state custody, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to Magistrate Judge Bernard Skomal for a report and recommendation. After Judge Skomal issued his substantial report and recommendation (the "R&R"), Farley filed objections ("Objections" or "Obj.").

Farley was convicted in California state court of first degree murder, robbery, and burglary. The jury made additional findings that he committed the murder while engaged in a robbery and burglary, that he committed all three crimes for the benefit of a criminal street gang, that a firearm was used during the crime, and that the crime was committed in an inhabited dwelling. He was sentenced to life without

the possibility of parole plus an additional consecutive sentence of 25 years to life. In his petition, he raised nine claims for relief.

**Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Federal habeas review of state court judgments is highly deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As to claims adjudicated on the merits in state court, the Court can grant relief only if those proceedings resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court; or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d). The state courts' factual determinations are presumed correct, and this presumption can only be rebutted by clear and convincing evidence. § 2254(e)(1). The Court's review is limited to the record before the state court. *Pinholster*, 563 U.S. 170, 181—82 (2011).

Where, as here, the state supreme court summarily denies relief, the Court "looks through" to the last reasoned decision — in this case, the California Court of Appeals' decision — to determine the basis for the state supreme court's judgment. *See Reis-Campos v. Biter*, 832 F.3d 968, 973–74 (9th Cir. 2016). But if there is no reasoned decision on a particular claim, the petitioner must show that
/ / /

2

16cv188-LAB (BGS)

there was no reasonable basis for the denial of relief. *Id.* at 974 (citing *Richter*, 562 U.S. at 92).

Federal habeas relief is available only when a prisoner is in custody in violation of federal law; errors of state law are not a basis for issuance of the writ. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

**Request for Stay and Abeyance**

The petition included a request for stay and abeyance as to three ineffective assistance of counsel claims that Farley said he intended to bring in state court. The R&R recommended denying it as moot, because the claims in fact had been exhausted because Farley raised them in a habeas petition in the California Supreme Court. Neither party objected to this, and the Court **ADOPTS** the R&R's recommendation. The request for stay and abeyance is **DENIED**.

**Farley's Objections as to Legal Standards**

Farley's objections, while lengthy, are premised on the erroneous idea that federal habeas review is *de novo*. He contends that under AEDPA no deference is due to state courts' decisions. For example, he argues that "no AEDPA deference should have been accorded" to the state courts' decision (Obj. at 1) and faults Judge Skomal for this. (*Id.* at 2 ("The Magistrate Judge['s] basis for the decision is deference to the state court decision . . . .").) He argues that Judge Skomal should have found some independent reasons for his recommendations instead of relying on the state courts' factual findings or deferring to state courts' determinations. (*Id.* at 2 ("Moreover, the Magistrate Judge establishes no independent legal or reasonable basis for his decision . . . ."); 14.) He appears to argue that the Court's review is not limited to the state court record, and that the Court should consider arguments based on factual bases that were never developed in state court. And he also argues that the Court should weigh the evidence itself. (*Id.* at 13.)

///

3
16cv188-LAB (BGS)

Farley's concept of the standard of review is completely incorrect, and the standards set forth in the R&R are correct. Farley's petition is subject to AEDPA, and the Court's review of state court judgments a deferential one. The R&R correctly states the legal standards, which the Court **ADOPTS**.

A good part of Farley's objections is devoted to arguing legal positions that the R&R either explicitly or implicitly agrees with, such as his right to a fair trial, his right to competent counsel, his right to an impartial jury, and the "beyond a reasonable doubt" standard applicable to criminal cases. The points where he agrees with the R&R are not, however, objections and do not trigger a *de novo* review.

Farley also makes a number of generalized and conclusory objections, which do not require review, and which in any event either lack merit or do not affect the outcome.

**Discussion of Farley's Claims**

The facts of Farley's case, as well as the procedural history, are set forth in the R&R. Because the parties are aware of them, the Court does not repeat them here, except as necessary for discussion. Most of Farley's objections focus on his claims of ineffective assistance of counsel, and he mentions other claims only very briefly and conclusorily.

**Claims 1 Through 5: Ineffective Assistance of Counsel**

Farley claims his trial counsel was ineffective in several respects: failure to introduce evidence of witnesses' inability to identify him in a live police line-up; failing to present evidence of innocent explanations for his behavior following the murder; failing to raise insufficiency of the evidence for first degree murder; failing to raise a *Batson/Wheeler* challenge; and failing to raise third-party culpability as to Leroy Thomas, an associate of one of Farley's co-defendants. Farley argues his trial counsel was ineffective in all these respects, and his appellate counsel was ineffective for failing to raise claims 3 through 5 on direct appeal.

Ineffective assistance of counsel is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). This is a highly deferential standard, and surmounting it is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689.

The R&R provides a thorough and correct discussion of that standard. A state court's determination that relief is not warranted under *Strickland* is reviewed under a doubly deferential standard, because *Strickland* and § 2254 deference are operating in tandem. *Richter*, 562 U.S. at 105. The question the Court must answer is not whether in the Court's own opinion trial and appellate counsel's performance was adequate, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

**Appellate Counsel**

Farley objects that appellate counsel are required to raise every potentially meritorious issue. Specifically, he argues:

> Appellate counsel [have] a duty to zealously represent their clients. Appellate counsel failed to argue zealously all meritorious issues for his client and assist the court in understanding the facts and legal issues involved in petitioner[']s case. The focus of the court is [whether] appellate counsel met their duty to present arguable issues.

(Obj. at 12.) The Supreme Court has previously rejected this standard. *Jones v. Barnes*, 463 U.S. 745, 752–53 (1983) (holding that appellate counsel is not required to present every arguable issue, explaining that doing so "runs the risk of burying good arguments . . . .") And it has recently strengthened its position: "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017). Failing to raise an issue on appeal is only deficient

performance if the issue was "plainly stronger" than the issues counsel did raise. *Id.* at 2067.

The claims Farley points to were not plainly stronger than the issues that were raised. And more to the point, the state courts' rejection of this claim was not unreasonable.[1]

### Trial Counsel

Farley's counsel was not ineffective within the meaning of *Strickland* for any of the reasons Farley advances. The tactics Farley suggests were either risky or unlikely to succeed, or both, and his trial counsel was reasonable in deciding to try other approaches. His Objections consist mainly of confident but unsupported assertions that if his counsel had done something differently, he surely have been acquitted.

The police line-up evidence was cumulative, which limited its value, because the same two witnesses also failed to identify Farley in court and testified that they did not identify him in a photographic lineup. Furthermore, as the state court pointed out, trial counsel identified real risks associated with introducing it. For example, mentioning that Farley was present in the line-ups created a risk of emphasizing to the jury that Farley had been a suspect immediately after the murder. Trial counsel also mentioned that he didn't want to give the witnesses an opportunity to correct or explain their non-identification. (Lodgment 1, part 11, at 2604:7–2606:8.)

/ / /

/ / /

---

[1] Because the California Court of Appeals' decision was the last reasoned decision, the Court looks to that decision to determine the California Supreme Court's reasoning. But it is the reasonableness of the California Supreme Court's decision that is at issue here.

The record shows trial counsel considered and thought through his decision, and was able to give reasons for it. The state court's decision that this tactical decision did not amount to ineffective assistance under *Strickland* was reasonable.

Farley suggests that his counsel should have introduced an innocent explanation for his trip to Louisiana right after the murder, and for his communications with his parents. According to Farley, he went to Louisiana, not to flee after the murder, but for a pre-planned visit to his wife, from whom he was separated, to celebrate their wedding anniversary. He brought his girlfriend, a prostitute, on the trip so that he could have sexual relations with her. (Lodgment 1, part 11, at 2566:1–9, 2590:2–7, 2594:12–22.)[2] She was apparently plying her trade during the trip, and Farley's trial counsel was concerned the jury might think he was her pimp. (*Id.*) Because Farley was not going to testify (*id.* at 2564:20–27), Farley's wife's and girlfriend's testimony may have been required. His counsel found the girlfriend not credible, and decided that offering her testimony was potentially more harmful than beneficial. (*Id.* at 2594:12–27.) His counsel also believed that Farley's wife, who was decidedly unhappy after learning about Farley's girlfriend, might prove to be a dangerous witness. (*Id.* at 2631:8–13; *see also id.* at 2631:14–2634:23 (testimony about other problems with this witness).) His counsel also expressed concern that the jury would not believe the explanation, which he himself found "preposterous." (*Id.*)

Putting on this evidence would have carried significant risk with little assurance that it would help Farley's case. Counsel are not ineffective for failing to pursue options that might be harmful to the defense, *see Richter*, 562 U.S. at

---

[2] The references cited here and in the R&R, are to Farley's trial counsel's testimony in state court. These citations are provided, not because the Court is making a credibility determination or weighing the facts, but to illustrate the fact that the state courts' decisions were well-supported by the record.

108, or "could only have alienated [the defendant] in the eyes of the jury." *See Bell v. Cone*, 535 U.S. 685, 700 (2002). *See also Denham v.* Deeds, 954 F.2d 1501 1505 (9th Cir. 1992) (holding that attorney's decision not to call alibi witness whose proposed testimony included glaring inconsistencies reflected sound professional judgment). As the R&R correctly points out, if trial counsel had tried to use it, Farley might well now be arguing that his counsel was ineffective for doing so. The state court reasonably determined that Farley's counsel's performance was not ineffective within the meaning of *Strickland*.

Part of the evidence against Farley was his own internet searches for warrants on himself and his co-defendant Terry, and his question to a police officer about whether he could be charged with a gang crime in light of his co-defendant's gang membership. Farley explains that he knew he was a suspect because his mother told him. He also explains a change in his phone number while he was in Louisiana by saying his mother did it.[3]

Because Farley's counsel found his mother to be hostile and likely a "terrible witness," he did not call her. (Lodgment 1, part 11 at 2566:4–14; Lodgment 6 at 18.) Farley's father could not remember any communications with Farley while the latter was in Louisiana, and could not explain the internet searches. Therefore trial counsel determined they could only be established through Farley's mother's testimony. The state court also reasonably determined that failure to present this evidence did not amount to ineffective assistance of counsel.

---

[3] Farley did not develop this argument in state court, but merely mentioned it in passing. The Court of Appeal did not specifically mention this argument. But assuming it was adequately raised and the state court merely neglected to explain its reasoning, Farley was obligated to show that there was no reasonable basis for the denial of relief. *See Richter*, 562 U.S. 562 U.S. at 92. He has not done this. And in any event, this part of his claim fails for the same reasons the rest of this claim fails.

Farley did not adequately raise on appeal the claim that his trial counsel was ineffective for failing to argue insufficiency of the evidence. Farley seeks to excuse this by arguing that his appellate counsel was also ineffective. In his view, the Court should weigh the evidence, taking note of contradictions and inconsistencies, and determine whether it was sufficient to convict him. (Obj. at 13.)

The correct standard, however, is given in *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, the reviewing court, after viewing the evidence in the light most favorable to the jury only needs to determine whether any rational jury could have found the elements of the crime proved beyond a reasonable doubt. If any rational jury could have convicted him, the reviewing court need not grant relief. Here, for reasons set forth in the R&R's discussion of the California Court of Appeals' summary, the evidence, though circumstantial, was easily sufficient to support a conviction. Farley's suggestions about how a jury might have interpreted the evidence do not show the *Jackson* standard was met. His trial counsel was not ineffective for failing to make the futile gesture of raising sufficiency of the evidence, and his appellate counsel was also not ineffective for failing to raise it on appeal. *See Juan H. v. Allen*, 408 F.3d 1262, 1273–74 (9th Cir. 2005) (holding that trial counsel's failure to engage in a futile action cannot serve as the basis for an ineffective assistance claim).

Farley's objections barely mention the *Batson/Wheeler* challenge, except to cite *Foster v. Chatman*, 136 S. Ct. 1737 (2016). Farley, however, incorrectly believes that the mere absence of African-Americans on the jury would have supported such a challenge. But a *Batson/Wheeler* challenge requires a showing of purposeful discrimination in using peremptory strikes. The mere fact that a jury is not composed in whole or part by jurors of a particular race does not give rise to a claim for relief. *Batson v. Kentucky*, 476 U.S. 79, 85–86 (1986). Farley has

never shown that the prosecution improperly used peremptory strikes, nor has he alleged any facts that would give rise to a meritorious *Batson/Wheeler* challenge. His trial counsel was therefore not ineffective for failing to make such a claim.

The state court rejected Farley's claim that his counsel was ineffective for failing to pursue a third-party liability theory focusing on Leroy Thomas. The R&R concluded this was reasonable, because Farley did not back up his claim with any evidence other than a photograph of Thomas and therefore did not meet his burden.[4] Although Farley's petition in this Court includes a multitude of allegations about facts he believes back up his claim, the Court's review is limited to the record before the state court. *Pinholster*, 563 U.S. at 181–82. The Court cannot grant relief on a claim based on evidence he did not bother to present to the state court.[5]

The R&R also addressed the merits, outlining Farley's trial counsel's detailed reasoning in deciding not to pursue this defense, which entailed among other things the considerable risk of implicating Farley even more deeply than he already was, and the relatively weak evidence tying Thomas to the murder. Farley's objections do not dispute any of this reasoning.

Farley has offered reasons why, in retrospect, his counsel might have done things differently. But it is not the Court's function to second-guess trial counsel's tactical decisions after conviction. *Strickland*, 466 U.S. at 689. The question that the state courts on review were answering was not whether Farley's counsel's approach was optimal, but whether it was competent. The question this Court must

---

[4] Although the R&R focused on Farley's petition in the California Court of Appeals, his petition to the California Supreme Court (Lodgment 13) likewise included no evidence other than Thomas' photograph.

[5] Farley's claim is not based on any new evidence or any evidence that he could not, with reasonable diligence, have presented to the state court. Rather, as the state court determined, he made "numerous factual allegations" but did not provide include copies of reasonably available documentary evidence to support them. (Lodgment 12 at 1–2.)

10

16cv188-LAB (BGS)

answer is not whether it agrees with either Farley's counsel's decisions or with the state courts' assessment of them. Rather, the issue before this Court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. Considered either individually or cumulatively, Farley's trial counsel's decisions or tactics do not amount to ineffective assistance under *Strickland*. The state courts' rejection of these claims was not unreasonable.

**Claims 6, 8, and 9: Evidentiary Rulings**

These three claims concern admission of gang expert opinion and evidence of Farley's tattoos, and exclusion of third-party culpability of David Foster. Farley raises almost no objections to the R&R's determination that these claims do not warrant relief, other than to deny that he was a gang member and claim that admission of gang evidence was highly prejudicial.

The admission or exclusion of evidence is an issue of state law; even if erroneous, it ordinarily does not warrant federal habeas relief. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Evidentiary errors could serve as a basis for federal habeas relief, however, if they render the trial fundamentally unfair, and if they violate clearly established federal law as determined by the U.S. Supreme Court. *Id.* (citing *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)); § 2254(d)).

Even assuming the trial court erred in its evidentiary rulings and the state court on review erred in determining that the trial court's rulings were correct, none of these "errors" rendered Farley's trial fundamentally unfair. Nor is there any Supreme Court authority that forbids the state court's decisions regarding the admissibility or exclusion of this evidence. The state courts' rejection of these claims was reasonable.

/ / /

/ / /

11

16cv188-LAB (BGS)

**Claim 7: Juror Bias or Misconduct**

During the prosecutor's closing argument, as he was discussing the evidence that Farley had been conducting internet searches for warrants, he asked a rhetorical question that a juror unexpectedly answered aloud. The exchange was:

> Prosecutor: But the important question you can't get around, and there's no reasonable alternate explanation for it, it why, why is he going to these databases? Because at the end of the day he's not just putting in Pierre Terry's name, is he? What other name did he put in when it came time to look for warrants? Who was he worried about for getting warrants.
>
> Unidentified juror: Himself.
>
> Prosecutor: That's right, himself. Why am I looking up warrants for myself when I didn't do anything?

Farley's counsel did not hear the juror's comment, and made no objection. The R&R discussed this interchange, the state courts' reasoning in rejecting it, and federal standards thoroughly and correctly. The state courts made factual determinations that are fully supported by the record, and their rejection of this claim was both reasonable and grounded in the facts. Farley has not objected to the R&R's recommendation on this claim, other than to conclude that the event had a substantial and injurious effect on the trial.

Adding to the R&R's discussion, it is worth noting that this occurred during closing argument, and was therefore based on the evidence presented at trial. Moreover, the answer to this rhetorical question was not in dispute. At most, this remark might show that after hearing the evidence, the juror might have made up his or her mind about an undisputed issue, *i.e.*, that Farley was searching online to see if there were warrants out for his arrest.

Jurors are not required to remain agnostic about basic facts of the case or to refrain from preliminarily considering and forming opinions about the evidence. All

12

that is required is that jurors keep an open mind about the defendant's guilt until the case has been submitted to them. *Davis v. Woodford*, 384 F.3d 628, 652–53 (9th Cir. 2004) (quoting *United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974)). In fact, if it were true that a juror's premature expression of credence on some issue in the case necessarily rendered the conviction constitutionally infirm, *Klee* (which remains good law) presented a far stronger argument for it than this case does. In *Klee*, nine jurors during recesses prematurely expressed opinions on the defendant's guilt. Nevertheless, in light of evidence the jurors kept an open mind about the defendant's guilt, the improprieties were held to be harmless.

At least one other federal court has considered whether a juror's audible comment during closing argument warranted relief. In *Hill v. Warden*, 2013 WL 3035280 (W.D. Va., June 17, 2013), the court considered and rejected a habeas petitioner's claim based on a comment with a much greater potential for prejudice than was present in this case. During closing argument, a juror audibly answered the prosecutor's rhetorical question by opining that Hill locked the victim in the trunk of a car in order to kill her. *Id*. at *6. The defendant/petitioner argued that his counsel should have moved for a mistrial.[6] The state court's rejection of this claim implied that there was no apparent basis for Hill's counsel to object, and no reason to believe an objection would have been sustained. The district court concluded that the state court's rejection of Hill's claim was not contrary to or an unreasonable application of federal law, and not based on an unreasonable determination of the facts. *Id*.

Furthermore, in *Hill* as in this case, neither defense attorney heard the jurors' comments, and only learned about them when reviewing the transcripts afterwards. Because counsel were not aware of the remarks, they were not

---

[6] The *Hill* court was considering an ineffective assistance of counsel claim.

13

16cv188-LAB (BGS)

ineffective in failing to make contemporaneous objections. *Id.*at *6 n.7. *See Strickland*, 466 U.S. 689 (emphasizing that a court conducting habeas review should view the situation from "counsel's perspective at the time").

The situation in this case is far more benign than that presented in *Klee*. The trial court itself was not sure that the juror's answering of a rhetorical question and the prosecutor's follow-up were improper. But even assuming they were, the state courts found this did not deny Farley a fair trial, and rejected his claim. This determination was reasonable, and not counter to or an unreasonable application of any holding of the U.S. Supreme Court.

The Court agrees with the R&R's discussion, and **ADOPTS** it with the additional reasoning mentioned here.

**Conclusion and Order**

Having conducted a *de novo* review of those portions of the R&R Farley has objected to, the Court **OVERRULES** Farley's objections and concludes that Farley is entitled to no habeas relief. The Court **ADOPTS** the R&R, with additional analysis noted above. The petition is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 26, 2018

Hon. Larry Alan Burns
United States District Judge